IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LINDA H.[1],                              §
                                          §
                                          §
        Plaintiff,                        §
                                          §
v.                                        §        5:22-CV-6-H-BR
                                          §
COMMISSIONER, SOCIAL SECURITY             §
ADMINISTRATION,                           §
                                          §
        Defendant.                        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO AFFIRM
THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff, Linda H., ("Linda") seeks judicial review of the

decision of the Commissioner of Social Security, who denied her application for disability

insurance benefits under Title II of the Social Security Act ("SSA") for lack of disability. The

United States District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(c).

After considering the pleadings, briefs, and administrative record, the undersigned recommends

that the Commissioner's decision be AFFIRMED.

## I.    PROCEDURAL BACKGROUND

Linda sought Title II disability insurance benefits on March 25, 2020, to be retroactive to

December 24, 2019, because she suffered from "[l]ungs disease [sic], high blood pressure, high

cholesterol," and thyroid issues. (ECF 16 at 4). Linda's claim was denied initially on May 18,

2020, before being denied a second time on July 28, 2020 after reconsideration. (*Id.*). Following

---

[1] It is this Court's practice to identify the plaintiff using only the first name and last initial in determinative opinions in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

a hearing on March 9, 2021, an Administrative Law Judge ("ALJ") determined that Linda was

not disabled, as defined in 42 U.S.C. §§ 416(i) and 423(d), on April 28, 2021. (*Id.*).

In his sequential analysis under 20 C.F.R §§ 404.1520(a) and 416.920(a), the ALJ

determined that Linda did not engage in gainful activity from her alleged onset date, November

7, 2019. (ECF 13-1 at 30). The ALJ also determined that Linda suffered from chronic obstructive

pulmonary disease ("COPD") and hypertension, both of which qualify as the type of severe

impairment required for disability. (*Id.* at 30–31). However, the ALJ deemed these two

impairments inadequately severe because "there was no evidence of chronic impairment of gas

exchange," nor was there recurrent hospitalization. (*Id.* at 31). The ALJ continued that Linda had

"residual functional capacity" to perform sedentary work because, although Linda's impairments

"could reasonably be expected to cause the alleged symptoms," her statements on the limiting

effects of those symptoms "are not entirely consistent" with medical and other evidence. (*Id.*) at

32. Specifically, the ALJ pointed to Linda's medical examination records, which indicate she had

described her COPD as "well controlled" in November 2019, had "good exercise capacity" in

April 2020, and did not qualify for supplemental oxygen. (*Id.* at 33–34).

The ALJ characterized the opinion of Dr. Makram, Linda's treating physician, as

"partially persuasive," finding support elsewhere in the record for the doctor's view that Linda

could sit for eight hours and walk for one hour, but not for his belief that Linda would need

frequent, unscheduled breaks and would suffer from absenteeism. (*Id.* at 34). Indeed, the ALJ

noted that Dr. Markham's assertion of those requirements is supported neither by "his own

examinations" nor by "any of the objective medical evidence in the record," which included the opinions of two consulting medical experts (*Id.*)

Drawing all the evidence together, including a statement from Linda's sister on her ability to perform daily living tasks, the ALJ stated that the symptoms Linda alleged she was experiencing are not supported by the evidence from her medical examinations. (*Id.* at 34–35). Therefore, he concluded, Linda possessed the capability to hold occupations she had held in the past, including as an administrative assistant and a PBX operator. (*Id.* at 35).

The Appeals Council denied Linda's request for review on November 3, 2021. (*Id.* at 5). Consequently, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. § 405(g); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II.    FACTUAL BACKGROUND

Linda was 58 years old at the onset of the alleged disability, on November 7, 2019. (ECF 16 at 5). She completed two years of college. (*Id.*). Her work history included employment as a caregiver, a cafeteria cook, an administrative assistant, and a PBX operator. (ECF 13-1 at 63–64).

## III.    STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security

regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC (residual functional capacity) is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, a court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the

claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices," or, "no contrary medical evidence," will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

## IV.    DISCUSSION

Linda requests that the Commissioner's final decision be vacated and the cause remanded for further administrative proceedings, including a new hearing and decision. (ECF 16 at 16). In support, she presents arguments that can be roughly split into two categories. First, the ALJ's RFC determination is fatally flawed because it does not comport with the requirements of 20 C.F.R. § 404.1520c. Second, the ALJ's RFC determination is not based on the substantial evidence required due to its reliance "solely on the evidence of Plaintiff's medical conditions and not on a medical expert's opinion." (*Id.* at 4). The Commissioner counters that Linda's claim of legal error is rooted in the old regulatory scheme, in place before the 2017 revision, and the ALJ

correctly followed the procedure for considering medical opinions found in the regulations. (*Id.* at 2). For the reasons specified below, both of Linda's arguments fail.

### A. Required Analysis of 20 C.F.R. § 404.1520c

On January 18, 2017, the SSA published *Revisions to Rules Regarding the Evaluation of Medical Evidence*, which revised the regulations regarding medical opinion evidence considered in disability determinations. 82 Fed. Reg. 5844. For claims filed on or after March 27, 2017, an ALJ no longer must "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)).

Instead, the ALJ shall consider five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including (a) length of the treatment relationship, (b) frequency of examinations, (c) purpose of the treatment relationship, (d) extent of the treatment relationship, and (e) examining relationship); (4) specialization; and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c). "The most important factors" for the ALJ to consider in "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency…" 20 C.F.R. § 404.1520c(a).

Therefore, the ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [a claimant's] determination or decision," and may, but is not required to, explain how he considered the other three factors when he articulates how he considered the medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). The other three factors must be

articulated, however, if there are "two or more medical opinions or prior administrative medical findings about the same issue [that] are both equally well-supported . . . and consistent with the record . . . but are not exactly the same[.]" 20 C.F.R. § 404.1520c(b)(3). When one medical source provides multiple opinions, the ALJ is not required to "articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." 20 C.F.R. § 404.1520c(b)(1). The SSA makes clear that "[i]t is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he] considered all of the factors for all of the medical opinions and prior administrative medical findings in [a] case record." *Id.*

Linda complains that "while the ALJ recognizes his obligations" to review consistency and supportability under the new regulations, "[h]is minimal explanations [of his view of Dr. Makram's opinion] do not offer this Court a sufficient explanation allowing for meaningful review." (ECF 16 at 12). She continues in her reply brief to quote the ALJ's entire discussion of Dr. Makram's opinion, which reads:

> Dr. Makram's opinions are partially persuasive. His opinions regarding the claimant's ability to sit for eight hours, her lack of need to recline/lie down, and her ability to manipulate, are supported by the normal musculoskeletal examinations in the record, and are consistent with the other medical evidence in the record. She had intact cranial nerves and normal strength, reflexes and sensation (1F & 3F). However, his opinions regarding mental limitations, the need for unscheduled breaks, and absenteeism are not supported by his own examinations, nor are they consistent with any of the objective medical evidence in the record. Dr. Markam's suggestion that the claimant can lift/carry at the light exertional level is also not supported by the evidence supporting her significant breathing disorder. Finally, I note that Dr. Makram also noted that the claimant would benefit from living on the first floor of her apartment, which, although non-specific, is consistent with the evidence that climbing stairs would be difficult for the claimant to perform given her breathing disorder.

(ECF 18 at 3–4; ECF 13-1 at 34).

The bulk of Linda's argument rests on the decision rendered by another judge in this district in *Turner-Clewis v. Saul*. 2021 WL 2302770 (N.D. Tex. May 19, 2021). In particular, she juxtaposes the reasoning of the ALJ in *Turner-Clewis*, which was viewed favorably by the court, with the reasoning of the ALJ in her case. (ECF 18 at 2–3). She states that the ALJ's treatment of Dr. Makram's opinion "contains almost no analysis whatsoever," with the implicit argument being *Turner-Clewis* is some sort of minimum standard and all analyses that fall below it are, by definition, deficient. (*Id.* at 4).

The ALJ's decision in her case, though, is not deficient. While it is true that the ALJ in *Turner-Clewis* chose to address each of the five factors, they were not obligated to and neither was the ALJ in this case. *Turner-Clewis*, 2021 WL 2302770 at *8. Rather, the regulations specifically state that the ALJ is required to specifically explain supportability and consistency, "and may, but [is] not required to," explain how he considered the other three factors. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The ALJ in *Turner-Clewis* went above what is required. Therefore, the ALJ's decision here is not deficient for failing to address the other three factors beyond those required by the regulations, but nor is the explanation itself deficient, let alone to a degree that would frustrate judicial review. The ALJ detailed each part of Dr. Makram's opinion[2] before specifying which parts were supported in and consistent with the record and which were not. Reviewing the information presented, point by point, and using a determination of which evidence is supported

---

[2] Specifically, Dr. Makram's opinion, which appears to consist of a single two-page, fill-in-the-blank form, specified that Linda's symptoms would occasionally interfere with her attention and concentration at work, she would not need to recline or lie down for a period of time in excess of her breaks, she could walk for one city block, she could sit for eight hours and stand for one hour, would need unscheduled ten to fifteen minute breaks every one to two hours, could lift ten pounds frequently and 20 pounds occasionally, had no limitations on handling or reaching, and would need to miss work once or twice a month. (ECF 13-1 at 34).

by other objective medical facts and opinions of examining physicians is sufficient under the

law. *Laffoon*, 558 F.2d at 254 ("Conflicts in the evidence, including those arising in medical

opinions, are to be resolved not by the courts, but by the [Commissioner].").  For those reasons,

the Court finds the Commissioner applied the correct legal standard without errors of law.

### B. Substantial Evidence in RFC Determination

Linda next advances the position that the ALJ chose selectively from the opinions of the

various medical experts' opinions in the record to essentially craft his own medical opinion and

use it to support his ultimate conclusion. (ECF 16 at 13). The ALJ may not, she argues,

"independently [determine] the extent and necessity of Plaintiff's postural and environmental

limitations without support from any medical opinions whatsoever." (*Id.* at 14). She later claims

the ALJ's decision that limitations beyond avoiding fumes were not necessary was "based upon

his own interpretation of the medical evidence." (*Id.*),

The Fifth Circuit has held that "an ALJ may not–without opinions from medical experts–

derive the applicant's residual functional capacity based solely on the evidence of his or her

claimed medical conditions." *Williams v. Astrue*, 355 Fed.App'x 828, 832 n.6 (5th Cir. 2009)

(citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Furthermore, ALJs may not "play

doctor" when reviewing cases before them and instead must rely strictly on the medical expert

opinions included in the record. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (quoting

*Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). However, the ALJ need not accept and

incorporate "limitations in the RFC that he did not find the record supported." *Turner-Clewis*,

2021 WL 2302770 at *5. A decision of the ALJ may only be overturned "if no credible

evidentiary choices or medical findings support the decision." *Id.*

9

It is difficult to see how the ALJ supplanted the expert medical opinions found in the record with his own in the decision. A review of the ALJ's reasoning reveals two main pieces of evidence he discounted. First, the ALJ found the postural limitations advanced by the initial medical consultant were unsupported by other evidence. (ECF 13-1 at 33). Second, the ALJ discounted Dr. Makram's opinions on mental limitations, such as unscheduled breaks and absenteeism, as likewise unsupported by the record. (*Id.* at 34). In both cases though, the ALJ pointed to other medical expert opinion evidence when discounting them. First, the ALJ noted that the postural limitations were "not consistent with the evidence at the hearing level," which included Linda's most recent medical exam and the opinion of Dr. Makram. (*Id.* at 33–34). In the second case, the ALJ found that Dr. Makram was inconsistent with himself and both the second and third state agency medical consultants. (ECF 13-1 at 34; ECF 17 at 5). In short, the ALJ supported his conclusions with other evidence and opinions in the record at each turn. He was not required to accept the first consultant's view on postural limitations nor Dr. Makram's view on mental limitations when they were the lone voices on their respective issues.[3] *See Turner-Clewis*, 2021 WL 2302770 at *5. For those reasons, the Court finds there is substantial evidence in the record to support the Commissioner's final decision.

## V.   **RECOMMENDATION**

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Commissioner's decision be AFFIRMED.

---

[3] In the end, the ALJ's final decision most closely matched the opinion of the second state agency medical consultant, though with additional restrictions favorable to Linda. (ECF 13-1 at 33–34; ECF 17 at 8). The ALJ is not required to adopt and adhere to one medical expert's opinion as though ordering off a menu. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards.") (emphasis added). Rather, as detailed above, it is the ALJ's decision to accept or reject portions of opinions so long as that decision is supported by substantial evidence and the proper legal standards. *Id.* Here, that is undoubtedly the case.

## VI.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO ORDERED.

ENTERED August 26, 2022.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).